IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DUANE EZELL, JR.          )
                          )      No. 15-1157
    v.                    )

CAROLYN W. COLVIN

**OPINION AND ORDER**

**SYNOPSIS**

Plaintiff filed an application for social security disability benefits, based on physical impairments. Pertinent here, those impairments include transposition of the great arteries, which is a congenital heart condition, and heart failure. Plaintiff's claim was denied initially and upon hearing before an administrative law judge ("ALJ"). The Appeals Council corrected one aspect of the residual functional capacity assessment ("RFC"), but affirmed that Plaintiff was not disabled. This appeal followed. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied.

**OPINION**

**I.     STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3)7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

1

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

**II.    THE PARTIES' MOTIONS**

Plaintiff contends that Defendant failed to consider the opinion of Dr. Cook, Plaintiff's treating cardiologist. In particular, he focuses on the ALJ's rejection of Dr. Cook's opinion regarding Plaintiff's need for frequent breaks.

The opinion of a treating physician is entitled to controlling weight if it is not inconsistent with other substantial evidence of record. 20 C.F.R. § 416.927(c)(2). If a treating physician's opinion "conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Grogan v.

2

Comm'r of Soc. Sec., 459 Fed. Appx. 132, 137 (3d Cir. 2012). Thus, an ALJ is entitled to decline to give controlling weight to a treating physician's opinion, when it is inconsistent internally or with other evidence of record. If the ALJ determines that the opinion is not entitled to controlling weight, it is appropriate to evaluate and weigh it against other evidence of record. See Money v. Barnhart, 91 Fed. Appx. 210, 213 (3d Cir. 2004); DeRohn v. Barnhart, 98 Fed. Appx. 137 (3d Cir. 2004). However, "minor inconsistencies in a physician's opinion do not constitute a sufficient reason to reject it." Nash v. Colvin, 2015 U.S. Dist. LEXIS 131782, at *11 (C.D. Cal. Sept. 29, 2015). Otherwise stated, a "doctors' [sic] longitudinal picture of Plaintiff's medical impairments simply cannot be rejected because of minor inconsistencies." Desantis v. Comm'r of Soc. Sec., 24 F. Supp. 3d 701, 709 (S.D. Ohio 2014). Instead, in order to reject a treating physician's opinion outright, contradictory medical evidence is required. Such an opinion may not be rejected based on the ALJ's speculation or lay opinion. Rivera v. Commissioner, 164 Fed. Appx. 260, 264 (3d Cir. 2006).

On September 24, 2012, Dr. Cook completed a Release to Return to Work Form. On that form, he checked the box indicating that Plaintiff could return to medium work, defined on the form as maximum lifting of up to 50 lbs., frequent lifting/carrying of up to 25 lbs., and frequent standing/walking.[1] Dr. Cook more specifically indicated that in a work shift, Plaintiff could frequently lift/carry and push/pull up to 20 lbs., and occasionally lift/carry and push/pull between 21 and 100 lbs. That form also indicated that Plaintiff could sit, stand, or walk for up to 8 hours, "with breaks."[2]

---

[1] The form's description of Medium work was the maximum level that was roughly equivalent to the limitations that Dr. Cook noted more specifically elsewhere on the form. The next level, Heavy Work, was defined as involving maximum lifting/carrying of up to 100 lbs., but frequent lifting/carrying of 50 lbs.
[2] On December 16, 2013, Dr. Cook signed a Pennsylvania Department of Welfare form stating that Plaintiff could work part time, which also noted the need for frequent breaks.

3

On December 12, 2012, Dr. Cook wrote a letter stating the preference that Plaintiff work no more than 6 hours at a time, but that "he should have frequent breaks throughout the day" if he were required to work an eight-hour shift. The letter further stated that Plaintiff should "lift no more than 20 lbs but if necessary he could lift up to 50 lbs on occasion," and that he can push/pull up to 20 pounds and occasionally push/pull up to 100 pounds. Along with the letter, Dr. Cook provided Plaintiff's most recent echocardiogram and clinic note.[3] The clinic note accompanying Dr. Cook's letter states that Plaintiff "continues to demonstrate biventricular enlargement and severe dysfunction, as well as frequent episodes of atrial tachycardia and elevated pulmonary pressures via cardiac catheterization." Dr. Cook further stated as follows:

> [Plaintiff] has a history of complex congenital heart disease including transposition of the great arteries status post Senning procedure, recurrent baffle obstruction, pulmonary hypertension, heart failure, Type II diabetes, obstructive sleep apnea, and hypertension. He is due to see us again in the clinic but has been unable to do so due to lack of employment and health insurance…Because of the severity of his congenital heart disease and co-morbidities listed above, we would recommend that he have significant limitations to his work capacity…We feel that Duane is quite ill and limited in his work capacity from a cardiac standpoint.

The ALJ declined to give Dr. Cook's opinion controlling weight, because he found the December 12, 2012 and September 24, 2012 opinions inconsistent. The inconsistencies to which the ALJ pointed were that Dr. Cook's September opinion, unlike the December opinion, allowed medium work with postural limitations, and contained no qualification regarding breaks or rest periods. The ALJ further noted a lack of explanation for the inconsistency, or evidence of a material change in medical condition, during the intervening three months, as well as the

---

[3] As the ALJ noted, Plaintiff's records indicate Plaintiff's classification under the New York Heart Association functional class II-III. Class II refers to slight limitation of physical activity; comfortable at rest; ordinary physical activity results in fatigue, palpitation, shortness of breath. Class III refers to marked limitation of physical activity; comfortable at rest; less than ordinary activity causes fatigue, palpitation, shortness of breath. http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp#.Vz9rYWf2aig.

4

lack of explanation or rationale for Dr. Cook's conclusions. The ALJ did not explicitly consider factors such as the length of the treating relationship and the frequency of examination, the nature and extent of the treatment relationship, and Dr. Cook's specialization.

The ALJ's approach to Dr. Cook's opinion, overall, raises several concerns. First, contrary to the ALJ's observation, the Release to Work Form that Dr. Cook completed in September in fact indicates Dr. Cook's opinion that Plaintiff could perform certain activities "with breaks." Second, the September and December opinions are not materially inconsistent. The ALJ referred to the latter opinion as describing "light work" – due, I presume, to Dr. Cook's stated preference that Plaintiff lift no more than 20 lbs. -- and the former as allowing "medium work," and relied on that discrepancy to assign less weight to the opinions. Again, however, the Release to Work form defined "medium work" for Dr. Cook, who was asked to choose a category, as "maximum lifting of up to 50 lbs., frequent lifting/carrying of up to 25 lbs"; on that same form, Dr. Cook more specifically noted frequent lifting/carrying of up to 20 lbs. Then, in December, Dr. Cook opined to "no more than 20 lbs but if necessary he could lift up to 50 lbs on occasion." Other than a five-pound differential in the amount allowed for frequent carrying, Dr. Cook's opinions in this regard do not vary. Under the circumstances, the inconsistency on which the ALJ relied appears to be <u>de minimis</u>. Third, given the information that Dr. Cook submitted along with his December letter, the basis for the ALJ's finding that Dr. Cook's opinion lacked rationale is not entirely clear.

In addition, more specifically, the ALJ erred when he rejected outright Dr. Cook's opinion regarding breaks. He rejected that opinion because Dr. Cook's recommendation in that regard accompanied "a description of work at the light exertional level," and the ALJ determined that Plaintiff would instead be limited to sedentary work. The ALJ then stated, "I find no reason to

5

believe that the claimant would require additional rest periods of he were limited to sedentary work where he could remain seated most of the workday, lifting no more than 10 pounds occasionally." "Light work" is defined as involving frequent lifting or carrying of objects weighing up to 10 pounds, with lifting no more than 20 pounds at a time, and includes certain jobs that "involve[] sitting most of the time." 20 C.F.R. § 404.1567. Sedentary work is defined as a job that involves sitting, and lifting no more than 10 pounds at a time. Id. Thus, both light and sedentary work might involve sitting most of the day. The ALJ did not indicate that he relied on evidence that the ten-pound difference in maximum lift/carry weights – the only certain difference between light and sedentary work -- negates the need for breaks to which Dr. Cook opined.[4] Given the totality of the medical records in this case, it is unclear whether the ALJ merely relied on speculation or lay opinion to determine that there is no reason to believe that Plaintiff would need frequent breaks if doing sedentary work.

Under all of the circumstances, this matter will be remanded for additional consideration of Dr. Cook's opinion, in accordance with all of the evidence of record and alongside the factors applicable to treating sources. The ALJ is certainly entitled to determine that Dr. Cook's opinion is not entitled to controlling weight, but must fully and specifically explain his reasons for assigning such weight. On remand, the ALJ may consider additional evidence if appropriate.

## CONCLUSION

In sum, Plaintiff's Motion will be granted, and Defendant's denied. This matter will be remanded for further proceedings. An appropriate Order follows.

---

[4] The ALJ afforded substantial weight to the opinion of a non-examining agency consultant, Dr. Fox. He did not, however, rely on Dr. Fox's opinion to reject Dr. Cook's opinion regarding the need for breaks.

**ORDER**

AND NOW, this 21st day of July, 2016, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is granted, and Defendant's denied. This matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court